IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WP COMPANY LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY )<br><br>Defendant. ) | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Civil Action No. _____ |

**INTRODUCTION AND NATURE OF THE ACTION**

1.  This is an action under the Public Access to Records Policy ("PARP") promulgated by the Washington Metropolitan Area Transit Authority ("WMATA"). Pursuant to the PARP and D.C. Code Ann. § 9-1107.01 *et seq.*, Plaintiff WP Company LLC, doing business as The Washington Post ("the Post"), seeks production of records in the possession and control of WMATA.

2.  WMATA is a government agency that operates and administers a mass transit system in the Washington, D.C., metropolitan area. The PARP is WMATA's administrative equivalent to the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and mirrors the FOIA in all relevant respects. Indeed, the PARP provides that "WMATA will interpret and apply this Policy consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice, including when determining whether to waive exemptions." PARP § 1.0, *available at*

http://www.wmata.com/about_metro/docs/pi_9_3_1.pdf; *see also ERG Transit Sys. (USA), Inc. v. Wash. Metro. Area Transit Auth.*, 593 F. Supp. 2d 249, 250–51 (D.D.C. 2009). Like FOIA, the PARP is enforceable in court, pursuant to an express provision in the PARP and the interstate compact that created WMATA.  See PARP § 9.3.2; WMATA Compact, D.C. Code § 9-1107.01, Art. XVI (81); *See also Wash. Metro. Area Transit Auth. v. Georgetown University*, 347 F.3d 941, 945 (D.C. Cir. 2003).

3. On February 15, February 22, and March 12, 2012, and on February 12, 2013, the Post requested information from WMATA relating to the WMATA Metrorail train collision on June 22, 2009, near the Fort Totten station on the Red Line, which killed nine people and injured more than eighty others.  The Post has covered that collision extensively, publishing numerous articles detailing the collision itself as well as the subsequent lawsuits arising out of it.  Specifically, the Post's PARP requests sought information pertaining to settlement agreements that resolved litigation arising from the collision.

4. On January 11, 2013, WMATA responded to the Post's PARP request and refused to produce any of the requested records.  In response to the Post's administrative appeal of that decision, WMATA continued to withhold a large portion of the requested records, including most of the requested settlement agreements.

5. WMATA's continued withholding of the requested records is improper. The Post respectfully requests this Court to order WMATA to produce the requested settlement agreements immediately.

**PARTIES**

6. The Post is a Delaware corporation, and maintains its principal place of business in Washington, D.C. It is the requester of the withheld records.

7. WMATA is an interstate instrumentality created by an interstate compact between the District of Columbia, the State of Maryland, and the Commonwealth of Virginia. D.C. Code § 9-1107.01 *et seq.*; Md. Code, Transportation, § 10-204 *et seq*; Va. Code § 56-529. Congress consented to the WMATA Compact pursuant to Article I, § 10 of the Constitution, thus codifying the compact into federal law under the Compact Clause. *See Morris v. WMATA*, 781 F.2d 218, 220 (D.C. Cir. 1986). Pursuant to that compact, WMATA may sue and be sued in its own name. *See* D.C. Code § 9-1107.01, at Art. V § 12(a). WMATA has possession and control over the records the Post seeks.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to Section 81 of the WMATA Compact, D.C. Code § 9-1107.01, Art. XVI (81), which provides that "[t]he United States District Courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]." *See also Wash. Metro. Area Transit Auth. v. Georgetown University*, 347 F.3d 941, 945 (D.C. Cir. 2003). Section 9.3.2 of the PARP, in turn, provides that "[i]n accordance with Section 81 of the WMATA Compact, an action to enforce the [PARP] may be brought in any state or federal Court of the United States located in the District of Columbia . . . without regard to the amount in controversy."

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

10. On June 22, 2009, two WMATA Red Line Metrorail trains collided near the Fort Totten Metrorail station in Washington D.C. This so-called Red Line collision killed nine passengers and injured more than eighty others, making it the deadliest crash in WMATA's history.

11. In the aftermath of the Red Line collision, a number of the alleged victims of the crash filed lawsuits against WMATA and WMATA's contractors. In this Court, lawsuits related to the collision were consolidated and assigned to Judge Walton. *See* Dkt. No. 855, *In re Ft. Totten Metrorail Cases*, No. 10-mc-314, at 2 (D.D.C. Aug. 8, 2013) (the "*Ft. Totten Cases*").

12. Many of the lawsuits relating to the Red Line collision terminated in settlement agreements.

13. The collision itself, as well as the lawsuits arising from it, received substantial media attention, and the Post has published various articles on both subjects. *See, e.g.*, Dana Hedgpeth, *Judge Rules Metro Should Release Settlement Amounts*, Wash. Post, Aug. 9, 2013; Lena H. Sun & Maria Glod, *At Least 6 Killed in Red Line Crash*, Wash. Post, June 23, 2009.

14. On February 15, 2012, the Post submitted a PARP request to WMATA seeking "the terms of the settlements, including the dollar amounts paid out, regarding the lawsuits related to the Red Line crash . . . for each of the cases that have been settled so far." On February 22, 2012, the Post clarified that it was seeking records "regarding

4

the lawsuits related to the June 2009 Red Line crash." WMATA designated these requests PARP #12-0055.

15. On March 12, 2012, the Post submitted a separate PARP request seeking information regarding "how much WMATA and other defendants in the 2009 Red Line crash case have paid in settlements," including "the percentages each has paid of the total amount that was paid out to the plaintiffs to date." On February 12, 2013, WMATA informed the Post that it had no record of its March 2012 request. That same day, the Post resubmitted its previous request, which WMATA designated PARP #13-0037. The PARP provides that requests are to be answered within twenty working days, which WMATA may extend by no more than an additional ten working days in "unusual circumstances" upon written notice to the requesting party. PARP § 7.10.1.

16. As is relevant here, nearly a year after the Post's initial PARP request, and without noticing or seeking any extensions of time, WMATA denied both PARP requests in full.[1] In e-mails sent on January 11, 2013 (as to PARP #12-0055) and February 21, 2013 (as to PARP #13-0037), WMATA declined to produce the requested records, asserting that they are exempt from disclosure under PARP Exemptions 6.1.4 (confidential commercial information), 6.1.5 (privileged inter- or intra-agency memoranda), and 6.1.6 (personal privacy). WMATA also later asserted that a gag order issued by Judge

---

[1] In response to PARP request #12-0055—which sought settlements related to "lawsuits"—WMATA produced records that the Post had *not* requested: a chart, with the individual names redacted, which reflected dollar amounts paid by WMATA to settle 84 claims that never resulted in litigation.

Walton in the consolidated *Fort Totten Metrorail Cases*, No. 10-mc-314 (D.D.C.), precluded it from releasing information regarding the settlement agreements.

17. The Post appealed WMATA's denials by letters dated February 21, 2013 (for PARP #12-0055) and February 26, 2013 (for PARP #13-0037). The PARP provides that WMATA is to decide appeals within thirty working days of receipt of the appeal. PARP § 9.1.3.

18. On March 15, 2013, The Post filed a Motion to Intervene and for Access to Court Records in the *Fort Totten Cases*. Among other things, the Post sought to unseal the settlement agreements involving minors, which were required by law to be filed with the court for approval. *See* D.C. Code § 21-120(a) (requiring court approval of settlements on behalf of minor children). By contrast, settlement agreements involving adults were not filed with the Court.

19. On April 12, 2013, 36 days after the Post submitted its initial appeal and almost a month after the Post filed its motions in the *Ft. Totten Cases*, WMATA notified the Post that it had "decided to defer action on [the PARP] appeal pending an outcome" on the Post's motion to unseal the settlements in the *Fort Totten Cases*.

20. On August 8, 2013, Judge Walton ordered the unsealing of the settlement agreements involving minors, subject to redactions of personally identifying information. *See* Dkt. No. 855, *In re Ft. Totten Metrorail Cases*, No. 10-mc-314 at 5-14 (D.D.C. Aug. 8, 2013). Two of the defendants thereafter noticed an appeal of Judge Walton's decision, which they voluntarily dismissed on December 30, 2013. On or about January

17, 2014, Judge Walton unsealed redacted versions of the settlement agreements with minors.

21. On January 28, 2014, the Post contacted WMATA to inquire about the status of its appeal given the resolution of its motions in the *Ft. Totten Cases*. WMATA responded that would issue a decision on the appeal by March 12 (thirty working days from its receipt of the Post's January 28 e-mail). On March 6, WMATA informed the Post that its review of the appeal would be "postponed" and that it "anticipate[d]" issuing a decision by March 31.

22. On April 2, 2014, WMATA issued a consolidated decision that granted in part and denied in part the Post's PARP appeals. As is relevant here, WMATA denied the Post's request for the settlement agreements involving adult plaintiffs for three separate reasons.[2]

23. *First,* WMATA asserted that "the terms of the litigation settlements"—information pertinent to each PARP request—are exempt from disclosure under PARP Exemption 6.1.4, which shields "confidential" commercial and financial information. WMATA noted that each of the settlement "agreements include[s] a confidentiality provision that prohibits the disclosure of the settlement terms," and maintained that it

---

[2] WMATA granted the Post's appeal in PARP #12-0055 insofar as the requests related to redacted settlement agreements involving minors, which the Post already had gained access to through the *Fort Totten Cases*. In addition, WMATA granted the Post's appeal in PARP #13-0037 for the total amount WMATA had paid in litigation settlements. WMATA disclosed that it had paid approximately $8.7 million in total in litigation settlements arising out of the Fort Totten collision.

7

would "set a bad precedent . . . [i]f a PARP request can be used to essentially nullify a confidentiality provision."

24. *Second*, WMATA asserted that "the terms of the litigation settlements"—information pertinent to each of the PARP requests—are exempt from disclosure under PARP Exemption 6.1.5, which shields information that would be privileged in civil discovery. WMATA asserted that Exemption 6.1.5 encompasses a "deliberative process/settlement negotiation privilege" which, it claimed, in this case shielded settlement *agreements* from disclosure.

25. *Third*, WMATA asserted that its estimates as to how much *other* defendants had paid to settle lawsuits—information pertinent to PARP # 13-0037—are subject to the attorney-client and attorney work product privileges, and accordingly are also shielded by Exemption 6.1.5. In support of its assertion of privilege, WMATA included an attachment identifying the withheld documents by "type," "title," and "exemption" asserted.[3]

26. The Post has exhausted its administrative remedies as required by the PARP. *See* PARP § 9.2.1.

27. Defendant WMATA has wrongfully withheld the requested settlement agreements from the Post.

**CLAIM FOR RELIEF (UNLAWFUL WITHHOLDING OF RECORDS)**

28. The Post incorporates the preceding paragraphs as if fully set forth herein.

---

[3] The attachment also included a column for the "date," but the date for each document was listed as "N/A."

8

29. WMATA improperly invoked PARP Exemptions 6.1.4 and 6.1.5 to withhold information regarding its settlement agreements with third parties.

30. PARP Exemption 6.1.4 permits WMATA to withhold "commercial or financial information obtained from a person [that] is privileged or confidential." In invoking this Exemption to withhold all of the documents requested, WMATA relied upon the confidentiality provision of the settlement agreements. But contrary to WMATA's assertion, Exemption 6.1.4 does not entitle WMATA to "*make* documents exempt" from PARP—and thus "subvert [PARP's] disclosure mandate"—"by the simple means of promising confidentiality" to third parties in a settlement agreement. *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 263 (D.C. Cir. 1982) (emphasis added).

31. PARP Exemption 6.1.5 allows WMATA to withhold "intra-agency and inter-agency . . . memoranda or letters which would not be made available by law to a party in litigation with WMATA." WMATA withheld all of the documents requested under this Exemption, asserting a "settlement negotiation privilege." Again contrary to WMATA's assertion, however, Exemption 6.1.5 does not encompass a "settlement negotiation privilege." *See NAACP Legal Def. Fund & Educ. Fund, Inc. v. U.S. Dep't of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) (rejecting invocation of a "settlement negotiation privilege" in the FOIA context). Moreover, a settlement agreement with a non-government third party is plainly not an "intra-agency" or "inter-agency" document, the threshold requirement of Exemption 6.1.5.

32. PARP Exemption 6.1.5 permits WMATA to withhold documents protected by the attorney-client or attorney work product privileges. But in invoking the privileges to withhold its estimates as to how much other defendants had paid to settle lawsuits, WMATA failed to provide the information necessary to demonstrate the privilege attaches—declining to provide, for example, the author(s), recipient(s), date, subject matter, or specific explanations as to why the documents in question would be privileged. *See, e.g., Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1343 (D.C. Cir. 2006). Thus, to the extent the documents are not protected by the privileges, they, too, should be disclosed.[4]

33. WMATA's unlawful invocation of Exemptions 6.1.4 and 6.1.5 violates the PARP.

### REQUEST FOR RELIEF

WHEREFORE, the Post prays that this Court:

1. Order WMATA to produce all responsive records;

2. Award the Post its costs and reasonable attorneys' fees in this action pursuant to PARP § 9.3.4; and

3. Grant such other and further relief as the Court may deem equitable and just.

---

[4] To the extent the estimates as to other defendants' settlements are in fact protected by the attorney-client or attorney work product privileges, the Post does not seek their disclosure.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: /s/ Kevin T. Baine_____
Kevin T. Baine (DC Bar # 238600)
James M. McDonald (DC Bar # 1003316)
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
Kbaine@wc.com
Jmcdonald@wc.om

*Counsel for The Washington Post*

July 8, 2014